UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENISHA TOWNS,
        Plaintiff,                  CIVIL ACTION NO. 12-11786

    v.                               DISTRICT JUDGE DAVID M. LAWSON

                                        MAGISTRATE JUDGE MARK A. RANDON
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kenisha Towns challenges the Commissioner of Social Security's final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 10). Judge David M. Lawson referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.**    **RECOMMENDATION**

Because substantial evidence supports the ALJ's decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.**    **DISCUSSION**

    *A.*    *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.    *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial

evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 645 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does

"not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on October 8, 2008, alleging she became disabled on May 17, 2006 (Tr. 14).[1]  The Commissioner initially denied Plaintiff's application (Tr. 14).  Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 14-22).  Plaintiff requested an Appeals Council review (Tr. 9).  On March 21, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.   *ALJ Findings*

Plaintiff was 33 years old on her date last insured.[2]  She has a high school education and past relevant work as an assembler, receptionist, inspector and production painter (Tr. 21).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity between her alleged disability onset date and her date last insured (Tr. 16).

---

[1]Plaintiff previously filed an application for disability insurance benefits on December 12, 2006.  That application was denied on December 26, 2006, and Plaintiff did not request further review (Tr. 14).

[2]The expiration of Plaintiff's insured status is also known as her "date last insured."  For purposes of disability insurance benefits, Plaintiff bears the burden of showing that she became disabled prior to her date last insured of March 31, 2010.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); 20 C.F.R. § 404.131(a).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease of the cervical spine with neck pain and numbness of the arms and hands, migraine headaches, narcolepsy, carpal tunnel syndrome of the left non-dominant hand, left medial epicondylitis/lateral epicondylitis[3] with left elbow pain and depression/dysthymia (Tr. 17).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 19).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a range of sedentary exertional work activities . . . with the following restrictions: (1) an occasional sit/stand option; (2) no pushing or pulling with the upper extremities weights of more than 10 pounds; (3) only occasional climbing of stairs, balancing and stooping; (4) no kneeling, crouching or crawling; (5) no overhead reaching; (6) frequent, but no constant, handling, fingering and feeling; and (7) from a mental standpoint [Plaintiff] could do simple, routine and repetitive work activities in a stable work environment associated with unskilled work.

(Tr. 19).

At step four, the ALJ found that Plaintiff could not perform her previous work as an assembler, receptionist, inspector or production painter (Tr. 21).

At step five, the ALJ denied Plaintiff benefits, finding she could perform a significant number of jobs available in the economy, such as general office clerk (5,000 available jobs in

---

[3] "Medial epicondylitis occurs with pain and inflammation on the inside of the elbow where the muscles that flex the wrist attach to the bone. This can occur not only in golfers but in anyone who performs repeated motions of the wrist." http://www.pamf.org/sports/king/medial_epicond.html (last visited February 11, 2013).

Michigan's lower peninsula), information clerk (2,500 available jobs in Michigan's lower peninsula) and ticket checker (1,800 available jobs in Michigan's lower peninsula) (Tr. 22).

### C. *Administrative Record*

#### 1. **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that she has neck pain, bilateral shoulder pain, pain in her left elbow, bilateral carpal tunnel syndrome, migraine headaches and depression (Tr. 43-44). Plaintiff's pain medication makes her drowsy; she takes a nap during the day (Tr. 46-47).

Plaintiff can get her youngest son ready for school, drive and lift 10-15 pounds (Tr. 47-49). Plaintiff cannot sit on bleachers, sit in chairs for long periods of time, hold objects or open pop bottles or jars (Tr. 47-48, 50). Plaintiff also has memory problems and trouble focusing (Tr. 50).

#### 2. **Vocational Expert**

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who: is Plaintiff's age and has Plaintiff's education and vocational experience. The individual can lift a maximum of 15 pounds and repetitively lift less than 10 pounds; stand, walk and sit six hours with the ability to alternate between standing and sitting; occasionally climb stairs, balance, stoop and kneel; and only perform simple, routine and repetitive work activities. She cannot push or pull more than 10 pounds; crouch, crawl or reach overhead; or engage in frequent handling, fingering and feeling (Tr. 52-53). The VE testified that such an individual could not perform Plaintiff's past work, but could perform work at the sedentary, unskilled level as a general office clerk, information clerk and ticket checker (Tr. 53-54).

### D. *Plaintiff's Claims of Error*[4]

---

[4]Plaintiff attempts to argue that the ALJ erred in assessing her credibility (Dkt. No. 8 at 6-8). However, Plaintiff's "argument" is simply a recitation of the law and how the ALJ erred in

1.      **Hypothetical Question to the VE**

On April 10, 2009, Dr. Clifford Buchman opined that Plaintiff could only lift two or three pounds; and could not: use power tools; use her hands repetitively; twist, turn, grasp or grip; use her left elbow to pull, push or twist; perform overhead work; or perform work that required her to hold her neck in a flexed position (Tr. 353).  A Physical Medical Source Statement dated May 27, 2010 from Dr. Buchman indiccates Plaintiff can occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and walk for two hours (with normal breaks) and push and pull for less than two hours (Tr. 338)

Plaintiff  argues that the ALJ's hypothetical to the VE did not incorporate Dr. Buchman's limitations, and therefore, substantial evidence does not support a finding that she is not disabled.  Specifically, Plaintiff argues that the hypothetical question is inaccurate because neither Dr. Buchman nor any other doctor said she could lift 15 pounds (Dkt. No. 8 at 12).[5]

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled.  *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where the hypothetical

---

*Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) – she does not explain *how* the ALJ erred in assessing *her* credibility.  Accordingly, Plaintiff's "argument" is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

[5]On December 1, 2008, Dr. Neil A. Friedman opined that Plaintiff could work eight hours a day without "formal restriction" (Tr. 316).  Plaintiff says the ALJ erred by using Dr. Friedman's opinion "as a determination for a [] disability" (Dkt. No. 8 at 11).  Plaintiff's argument lacks merit; the ALJ did not adopt Dr. Friedman's opinion.  Instead, he imposed significant limitations on Plaintiff in his RFC determination (Tr. 19).

does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325 at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

At the time Dr. Buchman rendered his April 2009 opinion that Plaintiff could only lift two or three pounds, he had not treated Plaintiff or developed a physician-patient relationship with her (Tr. 348). Accordingly, Dr. Buchman's opinion was not entitled to a special degree of deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). By May 2010, when Dr. Buchman opined that Plaintiff could occasionally lift 10 pounds, he had seen Plaintiff five times (Tr. 340-347), and this opinion is more reliable. Although the ALJ's hypothetical asked the VE to assume an individual who could lift a maximum of 15 pounds, the VE only identified jobs that could be performed at the sedentary exertional level (i.e., work that involves lifting no more than 10 pounds).[6] *See* 20 C.F.R. § 404.1567(a). And, the ALJ's RFC determination – which Plaintiff does not challenge – limits Plaintiff to sedentary work.[7]

The hypothetical to the VE incorporated all of Plaintiff's accepted physical and mental limitations, and the VE's testimony constitutes substantial evidence to support a finding that Plaintiff is not disabled.

### 2. VE's Testimony and the Dictionary of Occupational Titles

---

[6]Plaintiff testified at the administrative hearing that she could lift 10-15 pounds (Tr. 49).

[7]Sedentary work requires standing and walking "occasionally" which means no more than about two hours of an eight-hour workday. SSR 83-10. This is consistent with Dr. Buchman's May 2010 opinion.

-8-

The VE testified that Plaintiff could perform unskilled work, but Plaintiff argues that the "general office clerk" job has an SVP of three and the "information clerk" job has an SVP of four, which makes them semi-skilled jobs.

"The [Dictionary of Occupational Titles ("DOT")] lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p. Plaintiff is correct that an SVP of three and four corresponds to semi-skilled work. However, Plaintiff does not challenge the finding that the "ticket checker" job is unskilled work performed at the sedentary exertional level.

Even assuming the VE erred, and the Court does not consider the "general office clerk" or "information clerk" jobs in determining whether substantial evidence supports the ALJ's decision, it is harmless error. Substantial evidence supports a finding that Plaintiff could perform the "ticket checker" job identified by the VE. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157-58 (6th Cir. 2009).[8]

Furthermore, SSR 00-4p only requires the ALJ to ask the VE whether the testimony is consistent with the DOT and to obtain a reasonable explanation for any apparent conflicts. The ALJ was not under any obligation to investigate the accuracy of the VE's testimony beyond the

---

[8]While the VE testified that there are only 1,800 ticket checker jobs available in the lower peninsula, courts have found as few as 200 jobs regionally may constitute significant work in the national economy. *See Putman v. Astrue*, No. 4:07-cv-63, 2009 WL 838155 at *3 (E.D. Tenn. March 30, 2009) (200-250 available jobs in the region and 75,000 jobs in the national economy constitutes a significant work in the national economy) (citing *Craigie v. Bowen*, 835 F.2d 56, 58 (3rd Cir. 1987) (200 jobs in region is significant number of jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in region and 80,000 nationally); *McCallister v. Barnhart*, 2004 WL 1918724 at *5 (D. Me. Aug. 26, 2004) (372 jobs regionally and 50,955 nationally)).

inquiry mandated by SSR 00-4p. As stated in *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168-69 (6th Cir. 2009):

> Even if there were an inconsistency, [Plaintiff] has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by [Plaintiff] until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE ["will [her] testimony be consistent with the [DOT]" and "[was her] testimony consistent with the [DOT]]." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id.* This obligation falls to [Plaintiff's] counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that [P]laintiff's counsel did not do so is not grounds for relief. *See Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008).

Plaintiff's attorney did not ask the VE about any inconsistencies between her testimony and the DOT. Therefore, the ALJ's findings should not be disturbed on appeal.

### IV.  CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                            s/Mark A. Randon
                                            Mark A. Randon
                                            United States Magistrate Judge

Dated: February 21, 2013

## Certificate of Service

    *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 21, 2013, by electronic and/or ordinary mail.*

                                            *s/Eddrey Butts*
                                            *Acting Case Manager for Magistrate Judge Randon*